## CIRCUIT COURT OF FAIRFAX COUNTY

Tillman

v.

Fairfax Bank & Trust Co. et al.

January 16, 1996

Case No. (Law) 145138

BY JUDGE M. LANGHORNE KEITH

On December 28, 1995, this matter came on for a hearing on Defendant, Fairfax Bank & Trust Company demurrers as to all four counts of the Motion for Judgment and plea in bar to Count IV. For the reasons stated in Part I below, the demurrers are overruled as to Counts 1 through 3 and the plea in bar to Count IV is sustained. Also heard on December 28 were Defendants Rebibo's and Fairfax Regency, Inc.'s demurrer to Counts I through III and plea in bar to Count IV. For the reason stated in Part II below the plea in bar to Count IV is sustained. The Court does not reach the demurrers to Count IV in view of its ruling on the pleas in bar.

*Part I*

A. *Background*

According to the Motion for Judgment, Plaintiff, Tillman, pledged a $20,000.00 FNMA Bond pursuant to a written Pledge-Security Agreement with the Bank dated December 11, 1991. The purpose of this security agreement was to secure the payment and performance of a note made by Rit-Lyn, Inc., representing Rit-Lyn, Inc.'s indebtedness to the Bank pursuant to a letter of credit issued by the Bank. On September 29, 1993, the Rit-Lyn, Inc., letter of credit was surrendered to the Bank and the Rit-Lyn, Inc.'s note was fully satisfied.

Prior to the Rit-Lyn, Inc., transaction, Tillman and Rita Needleman, on May 29, 1990, had borrowed $130,000 from the Bank to purchase certain

real property located in Loudoun County (the "Loudoun Property"). This land loan (the "Tillman Loan") was secured by a purchase money deed of trust which went into default on or about March, 1992. The deed of trust was foreclosed on April 21, 1992, resulting in a deficiency under the Tillman Loan.

When the Rit-Lyn, Inc., note was satisfied in September of 1993, Tillman demanded the return of the FNMA bond. By letter dated October 22, 1993, the Bank informed Tillman that, exercising its right of offset, it had redeemed the FNMA bond and applied the proceeds as a credit against the Tillman Loan deficiency.

Asserting that the Bank's redemption of the Bond was a common-law conversion (Count I), a conversion under Article 3A of the U.C.C. (Count II), a breach of the Pledge-Security Agreement (Count III) and that, in connection with the Tillman Loan, the Bank breached its fiduciary duty and an implied covenant of good faith and fair dealing (Count IV), Tillman filed her Motion for Judgment on September 11, 1995.

Relying on its common law bankers' lien to justify the redemption of the bond, the bank demurred to Counts I and II on the ground that, as the redemption was not wrongful, it could not constitute conversion. In addition, the Bank demurred to Count I (common law conversion) on the ground that the U.C.C. provides an exclusive remedy if any conversion took place. The Bank demurred to Count III because, allegedly, that count failed to identify the contract breached and none of the documents attached to the Motion for Judgment provide for the unconditional return of the FNMA bond. Finally, the Bank demurred to the prayer for punitive damages on the ground that the U.C.C. limits damages to Tillman's interest in the bond and that as a matter of law the bank's conversion does not constitute actual malice. The Bank also asserted a plea in bar to Count IV, grounded on the one-year statute of limitations.

## B. *The Bankers' Lien*

The Bank correctly asserts that a common law bankers' lien exists in Virginia. *Peoples Nat'l Bank v. Coleman*, 175 Va. 483 (1940); *First Nat'l Bank v. Commercial Bank*, 163 Va. 162 (1934); *Reserve Bank v. State Bank*, 150 Va. 423 (1928); *Nolting v. Bank*, 99 Va. 54 (1901); *Ford's Adm'r v. Thornton*, 30 Va. (3 Leigh) 695 (1832); *Smith v. Akers*, 21 Va. Cir. 363 (1990). The effect of such a lien is that a bank has a lien on all funds belonging to its depositor for any indebtedness owing to it by the depositor. *Reserve Bank, supra* at 436. It is the debt not any default that

creates a bankers' lien. *Smith, supra* at 367. The lien applies not only to cash funds but securities such as the FNMA bond Tillman pledged to the Bank. *Reserve Bank, supra* at 434. Thus if a bankers' lien attached to the FNMA bond then Counts I and II must fail because the Bank's redemption of the bond was not wrongful. *Bader v. Central Fidelity Bank,* 245 Va. 286, 289 (1993) (conversion requires a wrongful exercise of authority over another's goods).

However, under the facts alleged in the Motion for Judgment the bankers' lien doctrine does not provide a safe harbour for the Bank. This is so because a bankers' lien does not attach to funds or securities delivered to a bank for a special purpose such as collateral for a third party loan. *Reynes v. Dumont,* 130 U.S. 359, 9 S. Ct. 486, 496 (1889). *See, First Nat'l Bank, supra* at 169.

> If securities are pledged to a bank to secure the payment of a particular loan or debt, the bank has no lien on them to secure the payment of a general balance due to it from the pledgor, nor for the payment of any other claim or indebtedness than the one for which they were specifically pledged. The fact that the parties have made the pledge for the particular debt must be held to exclude the intention of creating or relying on a lien that would otherwise exist upon the general deposit account. It is a special deposit or pledge for a special purpose, and when that purpose is accomplished, the lien ceases to exist.

10 Am. Jur. 2d, *Banks,* § 662 (1963). Thus the bankers' lien doctrine does not provide the Bank a defense to Tillman's conversion claim and the Bank's demurrer to Count I and Count II on that ground is overruled.

## C. *Uniform Commercial Code*

Article 3 (now Article 3A), negotiable instruments, of the U.C.C., includes a section dealing with the conversion of a negotiable instrument, Va. Code Ann. § 8.3A-420. Asserting that the U.C.C. occupies the field, the Bank argues that the common law count of conversion must be dismissed. It is not necessary for the Court to reach the Bank's preemption issue as the U.C.C. specifically provides that the negotiable instrument article "does not apply to securities governed by Title 8.8." Va. Code Ann. § 8.3A-102. The FNMA bond is a certificated security, Va. Code Ann. § 8.8-102(a), and a certificated security is "governed by this title [title 8.8] and not by title 8.3 even though it also meets the requirements of that

title." Va. Code Ann. § 8.8-102(c). Thus there can be no U.C.C. conversion count in this case and the Bank's preemption demurrer to Count I is overruled.

### D. *The Contract*

The Bank argues that Count III does not identify the contract allegedly breached by the Bank and none of the instruments attached to Tillman's Motion for Judgment provide unconditionally for the return of the FNMA bond to Tillman. But paragraph 14 specifically mentions the Pledge-Security Agreement and paragraph 17 of Count III incorporates, *inter alia*, paragraph 14. Thus, the Pledge-Security Agreement is part of Tillman's pleading, Rule of Court 1:4(i), and Count III, while somewhat bare-bones, sufficiently identifies the contract breached to survive the Bank's demurrer. As for the lack of specific language obligating the Bank to return the FNMA bond, creditors have a duty to return collateral when the debt secured is discharged, 68A Am. Jur. 2d, *Secured Transactions,* § 525 (1993), and at the demurrer stage, the Court will assume that this is an established usage and therefore part of the Pledge-Security Agreement. *See, Rosenberg v. Turner*, 124 Va. 769 (1916). The demurrer to Count III is overruled.

### E. *Punitive Damages*

Citing *Ford Motor Co. v. Bartholomew,* 224 Va. 421, 436 (1982), and *National Acceptance Co. v. Virginia Capital Bank,* 498 F. Supp. 1078, 1086 (E.D. Va. 1980), the Bank argues that the punitive damage claim in the conversion counts must be dismissed. Those cases denied punitive damages after a hearing on the merits, and the Court believes that Tillman has alleged sufficient facts to support her punitive damage claim at the demurrer stage of this proceeding. *See, CaterCorp Inc. v. Catering Concepts, Inc.,* 246 Va. 22 (1993). The Bank's demurrer to the claim for punitive damages is overruled.

### F. *The Statute of Limitations*

The Bank's plea in bar is grounded on Va. Code Ann. § 8.01-248, the one-year statute of limitations the Bank asserts is applicable to a breach of fiduciary duty claim. *Singer v. Dungan,* 45 F.3d 823 (4th Cir. 1995); *International Surplus Lines Co. v. Marsh & McLennan, Inc.,* 838 F.2d 124 (4th Cir. 1988). Tillman responds that as the Bank's action was directed against her property, Va. Code Ann. § 8.01-243(B), the five-year statute applies. *F.D.I.C. v. Cocke,* 7 F.3d 396 (4th Cir. 1993). Alternatively, Till-

man argues that her claim is "more akin" to a breach of oral contract action, and Va. Code Ann. § 8.01-246(4), the three-year statute should apply. Finally, even if the one-year statute is applicable, Tillman argues that the breach continues and the Bank's plea in bar must fail.

Assuming Count IV asserts a fiduciary or contractual duty owed by the Bank to Tillman, such a duty was breached at the latest on April 21, 1992, the date of the foreclosure sale. Va. Code Ann. § 8.01-230. The motion for judgment was filed on September 11, 1995. Thus whether the one-year or three-year statute applies, Count IV is barred. The five-year statute is inapplicable as Count IV expressly states that the Bank breached an obligation to Tillman and Va. Code Ann. § 8.01-243(B) has been applied consistently to one party's actions directly against another party's property. *See, e.g., Bader v. Central Fidelity Bank,* 245 Va. 286 (1993); *Vines v. Branch,* 244 Va. 185 (1992); *Eagles Court Condo. Assoc. v. Heatilator,* 239 Va. 325 (1990); *Hampton Roads Sanit. Dist. v. McDonnell,* 234 Va. 235 (1987). To hold otherwise would subject all oral breach of contract actions to the five-year tort statute of limitations. The plea in bar to Count IV is sustained.

## Part II

### A. *Background*

In Count IV to the Motion for Judgment, Tillman seeks damages against defendants Rebibo and Fairfax Regency, Inc., growing out of their consultant services with regard to the purchase of the Loudoun Property and the transactions leading up to and in connection with the Tillman Loan. Count IV is captioned "Breach of Fiduciary Duty" and alleges that these defendants owed a duty of good faith and fair dealing to Tillman and "breached their obligations to Plaintiff."

Rebibo and Fairfax Regency, Inc., filed a plea in bar grounded, as was the Bank's, on the one-year statute of limitations.

### B. *The Statute of Limitations*

These defendants assert that Va. Code Ann. § 8.01-248 applies to the claims against them in Count IV. In response, Tillman made the same arguments described in paragraph 6, above. The analysis in that paragraph applies to the claims against the non-Bank defendants. Their plea in bar is sustained.